Kenneth GREEN, Appellant,

v.

**UNITED STATES of America,
Appellee.**

**No. 21385.**

United States Court of Appeals District of Columbia Circuit.

Argued July 10, 1968.

Decided Nov. 1, 1968.

Mr. James S. Brocard, Washington, D. C. (appointed by this court), for appellant.

Mr. Julius A. Johnson, Asst. U. S. Atty., with whom Messrs. David G. Bress, U. S. Atty., Frank Q. Nebeker and Seymour Glanzer, Asst. U. S. Attys., were on the brief, for appellee.

Before BAZELON, Chief Judge, FAHY, Senior Circuit Judge, and WRIGHT, Circuit Judge.

FAHY, Senior Circuit Judge:

Appellant, 20 years of age at the time of the homicide, stands convicted of first degree murder in the fatal shooting of James E. Cartwright, and is under sentence of life imprisonment. There is no dispute he fired the fatal

---

shot as Cartwright was following him out and up the stairs from a basement where a birthday party of young people was in progress. There was evidence he and Cartwright had a dispute during the dancing at the party, that he and other uninvited guests were asked to leave, that he did so, went to his home, and returned to the scene of the party with a loaded pistol. Somewhat later uninvited guests were again asked to leave. Two teenage girls, who were seated in an areaway adjoining the basement, testified that appellant came out of the basement with his friend Davis, followed by Cartwright, that appellant uttered an obscenity, said, "if you haven't been shot before, you're shot now," pulled a gun from his coat pocket and shot Cartwright. In a photograph taken by the police while Cartwright was lying at the bottom of the steps a knife appeared. The girls testified they did not see Cartwright with a knife.

Appellant testified that when he left the party the second time and was walking into the yard he heard obscenities and a statement " 'turn around.' " He said he turned, that in the darkness he saw Cartwright make an advance toward him with what appeared to be a knife, and that in fear he aimed at Cartwright and fired. A knife was found near Cartwright's body. Other unclaimed knives were also found.

Appellant called four witnesses, three of whom were present at the party, but none actually saw the shooting. One testified that he had seen a knife next to Cartwright's body, and all testified that they had seen Cartwright in the early summer with a knife similar to a hawk-bill knife shown near Cartwright in the photograph. The friend Davis had not been located at the time of the trial.

The court instructed the jury on first degree murder of deliberate and premed-itated malice,[1] second degree murder,[2] and manslaughter,[3] as well as on self-defense. Because of error in the instructions regarding malice as hereinafter explained we grant a new trial. Contentions in other respects we think do not raise issues requiring reversal or necessitate discussion in this opinion.

■ The United States acknowledges that the following portion of the instruction on malice, as the court had held in Belton v. United States, 127 U.S.App.D. C. 201, 382 F.2d 150, was erroneous:

> If, in a prosecution of a homicide, it is shown that the accused, that is, the defendant, used a deadly weapon in the commission of the homicide, the law infers or presumes from the use of such weapon, in the absence of explanatory or mitigating circumstances, the existence of the malice essential to culpable homicide.

> I would instruct you as a matter of law that a gun is a deadly weapon.

As pointed out in *Belton* in the above circumstances, "the law permits [the jury] to infer" malice, but the law itself does not infer or presume malice. Objection was not made, however, and in *Belton* we held the error did not there require reversal under Rule 52(b), Chief Judge Bazelon dissenting. Moreover, in Howard v. United States, 128 U.S.App. D.C. 336, 389 F.2d 287, 291, where the instruction contained a similar mistake, which was not objected to, we also did not reverse.

The affirmances in *Belton* and *Howard*, notwithstanding the error, we think rest upon the over-all factual situations in those cases. We do not construe the decisions as laying down a binding rule that the error is never reversible unless the subject of objection. In any event, the error is not alone in the present case; for the instruction on malice also

1. 22 D.C.Code § 2401 (1967).

2. 22 D.C.Code § 2403 (1967).

3. Fryer v. United States, 93 U.S.App.D.C. 34, 38, 207 F.2d 134, 138.

advised the jury, no doubt inadvertently, and again without objection, as follows:

> In determining whether a wrongful act is intentionally done and, therefore, is done with malice, you should again bear in mind that every man is presumed to intend the natural and probable consequences of his own acts.

■ A wrongful act intentionally done is not therefore done with malice. Omitted from this definition of malice is the element of wilfulness, which the court elsewhere included in its definition of malice, or that the intentionally done wrongful act was without justification or excuse.[4] Appellant's case, as we have said, was submitted to the jury, and properly so, on the issues of deliberate and premeditated first degree murder, second degree murder and manslaughter. An element of both degrees of murder is malice; but malice is not an element of manslaughter.[5] Yet manslaughter may be and often is the intentional commission of a wrongful act. From a legal standpoint, therefore, when the court advised the jury that a wrongful act intentionally done is done with malice the effect, unless appellant were found not guilty, was to take the case out of the category of manslaughter and place it in the category of murder, notwithstanding on the facts there was an issue of manslaughter for the jury.

■ While we cannot require perfection, or achieve it ourselves, in a capital case special care, independently of counsel, has been traditionally the standard of review.[6] Weakley v. United States, 91 U.S.App.D.C. 8, 198 F.2d 940.[7] See Fisher v. United States, 328 U.S. 463, 468, 66 S.Ct. 1318, 90 L.Ed. 1382; Collazo v. United States, 90 U.S.App.D.C.

241, 253, 196 F.2d 573, 585. Moreover, the responsibility for instructing as to the elements of the offense rests with the judge. Counsel should of course be alert to point to error he deems harmful, thus affording opportunity for correction, but in this special function of the judge the responsibility is not fully shared by counsel, who indeed may be laboring under the same mistaken view of the law. . . .

■ Except as we have noted the instructions on malice were well formulated; but in concluding that the homicide was first degree murder we cannot know whether the jury were guided by the correct or the incorrect portions of the instructions. If the latter we must assume they felt obliged to determine that the homicide, if unlawful and not in self defense, was of graver degree than manslaughter. The error accordingly was prejudicial, aside from the question whether the repetition of the error referred to in *Belton* and *Howard* should be held ground for reversing in this case.

Should the case go to a new trial it is hoped that, should the defense so request, the United States will again try to locate Davis, and also Howard E. Jennifer, said in appellant's brief to have been in Vietnam at the time of the trial. He gave a statement to the police which the government has made available to the defense. It contains the question by the officer, "Did you see anything in Rudy's [Cartwright's] hand when he followed the boy's [sic] up the steps?", with Jennifer's answer: "I saw something flicker down by his hand and think it was a knife."

Reversed and remanded.

---

4. See Fisher v. United States, 328 U.S. 463, 468–469, n. 3, 66 S.Ct. 1318, 90 L.Ed. 1382; Hansborough v. United States, 113 U.S.App.D.C. 392, 394, n. 8, 308 F.2d 645, 647, n. 8; Fryer v. United States, *supra* note 3.

5. See note 4, *supra.*

6. This standard need not be abandoned when the resulting punishment is life imprisonment rather than death.

7. The instructions held erroneous in *Weakley* involved the deliberate and premeditated element of first degree murder. The exclusionary effect of the *Weakley* instructions, however, is anogous to the prejudice inherent in the exclusionary "malice" instruction here.