**Robert J. CARTER, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 21591.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 24, 1969.

Decided Dec. 8, 1970.

Petition for Rehearing Denied
Jan. 26, 1971.

Certiorari Denied April 19, 1971.
See 91 S.Ct. 1392.

Milton A. Kallis, Washington, D. C., (appointed by this court) for appellant.

John D. Aldock, Asst. U. S. Atty., with whom David G. Bress, U. S. Atty. at the time the brief was filed, and Harold H. Titus, Jr., Principal Asst. U. S. Atty., were on the brief, for appellee. Thomas A. Flannery, U. S. Atty., and John A. Terry, Asst. U. S. Atty., also entered appearances for appellee.

Before BAZELON, Chief Judge, and ROBINSON and ROBB, Circuit Judges.

PER CURIAM:

On October 1, 1966, appellant fired a single shot from his pistol, killing one Louis McKenzie. Indicted and tried for second-degree murder,[1] his sole defense at trial was that he acted in response to McKenzie's assaulting him with an eleven-inch butcher knife.[2] Appellant was convicted by a jury of second-degree murder and sentenced to a mandatory minimum term of twenty years in prison. On this appeal, he raises numerous points, only two of which require extended discussion.

1. 22 D.C.CODE § 2403 (1967).

2. Although the killing took place in an apartment populated at the time by some

I.

The government's prosecutor devoted much of his rebuttal argument to sarcastic attacks upon defense counsel, as well as the defendant himself:

Ladies and gentlemen of the jury, I am very happy that my opponent doesn't do the thing that I do, and that is try to inflame you. I know that he is only concerned with the facts. I know he is only concerned with bringing out what the evidence has shown, and he has no desire to inflame you one way or the other, particularly in favor of his client. I think Mr. —— has demonstrated tremendous objectivity on behalf of his client. For instance, when he tells you about how Robert has served in the Navy, and how he worked for the last 15 years consistently; and how, ladies and gentlemen, on last Friday when you all had a holiday, what did Robert do? He worked that day.

Now that's all very, very objective on the part of Mr. ——, and hasn't any importance as far as inflaming you in favor of his client. You know that. Because you know Mr. —— would only relate to you facts from the witness stand that bore upon the crime. And you know how important it is for you to know that Robert— pardon me—the defendant, worked last Friday. Now that's very material to what happened on the date of this killing, isn't it.

And Mr. —— stood before you and told you that he doesn't know why the prosecutor talked to you about being a judge and jury. It was to inflame you, but not Mr. ——. Mr. —— wouldn't do anything like that.

\* \* \* \* \* \*

I'm not going to say Mr. —— said that to inflame you in favor of his client. I wouldn't do that, because I

half a dozen persons, four of whom testified at trial, the knife was never found and no one but appellant remembered having seen any such weapon.

know Mr. _____ wouldn't think of such a thing.

\* \* \* \* \* \*

And, ladies and gentlemen of the jury, when we talk about lying, and talk about perjury, Mr. _____ has a way of saying to you, "Counsel says to you", "Counsel says this." I didn't say a thing. The witnesses said these things, not me.

\* \* \* \* \* \*

You reach your own decision, and leave out this "inflamed" argument that I use in this case; and only think of the objective argument of my opponent, please.

\* \* \* \* \* \*

In other words, we are painting a picture here of a man who just voluntarily surrenders himself to the whims of the jury, and takes the stand in order to tell the truth? Baloney. He took the stand in order to set up a defense—and he has a right to. What interest has he in lying to you?

\* \* \* \* \* \*

These are the, quote, "truths" you are to believe.

It should not be necessary to explain that the defendant, and not his attorney, is on trial in a criminal case. Nor should it be necessary to explain that sarcasm and ridicule are not the stuff of good argument or good taste in judicial proceedings.[3] When the government's representative resorts to such behavior, we are the poorer for it.[4] That the offensive remarks were made on rebuttal, rendering answer by defense counsel virtually impossible, makes them all the more regrettable.[5]

Prejudice in such matters is an imponderable difficult to discern upon a cold record.[6] The effect of an argument upon the jury is best gauged by those who observe it. In this case, defense counsel was elsewhere alert to object to—and the trial court to correct —the prosecutor's unwarranted remarks.[7] As for the prosecutor's attack upon the "truths" in appellant's testimony, we note that the trial took place before Gibson v. United States[8] and Harris v. United States[9] made clear our increasing concern with such remarks. Finally, we reiterate that both the prosecution and defense counsel should avoid inappropriate references to the accused.[10] On the present record, we cannot say that the prosecutor's improper remarks were sufficiently prejudicial to warrant reversal.

---

3. *Compare* Hamilton v. Alabama, 376 U.S. 650, 84 S.Ct. 982, 11 L.Ed.2d 979 (1964), reversing Ex parte Hamilton, 275 Ala. 574, 156 So.2d 926 (1963).

4. *Cf.* Olmstead v. United States, 277 U.S. 438, 485, 48 S.Ct. 564, 72 L.Ed. 944 (1928) (Brandeis, J., dissenting).

5. *Compare* United States v. Parker, 136 U.S.App.D.C. 97, 419 F.2d 679 (1969).

6. United States v. Green, 139 U.S.App.D.C. 75, 81, 429 F.2d 754, 760 (decided June 17, 1970).

7. *E.g.*, Transcript 340–41:
   PROSECUTOR: You shot him in the chest. He turned around like this? What happened to the knife?
   DEFENDANT: I don't—
   PROSECUTOR: Pardon me.
   DEFENDANT: I don't know. We never found it.
   PROSECUTOR: We never found it. I know we didn't.

   DEFENSE COUNSEL: I object to those snide remarks.
   THE COURT: I sustain it. Disregard it, ladies and gentlemen.

8. 131 U.S.App.D.C. 163, 403 F.2d 569 (1968).

9. 131 U.S.App.D.C. 105, 402 F.2d 656 (1968).

10. In closing argument, appellant's trial counsel, who is not his counsel on this appeal, referred to his client as "Robert" and the prosecutor took the same tack on rebuttal. We have cautioned against this technique, *see* Pendergrast v. United States, 135 U.S.App.D.C. 20, 30 n. 57, 416 F.2d 776, 786 n. 57, cert. denied, 395 U.S. 926, 89 S.Ct. 1782, 23 L.Ed.2d 243 (1969), which, however, was decided after trial of the case at bar. *See also* Armstead v. United States, 121 U.S.App.D.C. 22, 347 F.2d 806 (1965).

## II.

■ Appellant likewise claims error in the trial judge's charge to the jury on the critical issue of malice. In accordance with his announced policy of relying whenever possible upon standardized jury instructions,[11] the judge defined malice for the jury [12] in almost precisely the wording of the Junior Bar Section's Instruction 83,[13] with a perceptive modification of the language of the last paragraph which the judge deemed wise in light of our decision in the *Austin* case.[14] Appellant attacks one of the definitions of malice contained in that instruction, as follows:

> *Malice may also be defined as a condition of mind that prompts a person to do a wrongful act willfully, that is, on purpose, to the injury of another, or to do intentionally a wrongful act toward another without justification or excuse.*

The argument is that the italicized portion of this definition erroneously informed the jury that an injurious, wrongful act is done with malice if done only "willfully, that is, on purpose."

In Green v. United States,[15] upon which appellant relies, we condemned an

---

11. The judge noted that such a practice has the beneficial effect of aiding review by this court, since standard instructions need not be combed in detail in each individual case. That is a consideration worth honoring so long as the instructions and the evidence maintain a concrete relationship, as certainly they did here. But as Mr. Justice Frankfurter once said in a similar context. "[W]e are not here dealing with an abstract man who killed an abstract [person] under abstract circumstances and received an abstract trial on abstract issues." Fisher v. United States, 328 U.S. 463, 478, 66 S.Ct. 1318, 1326, 90 L.Ed. 1382 (1946) (dissenting opinion). In many cases, the jury's attention may be more clearly focused upon the critical issues for its decision by careful modification of the instructions in light of the particular facts of the case, than by a series of abstract principles unrelated to any factual situation, as could become the case with standardized instructions. Of course, the wording of instructions is in general a matter within the sound discretion of the trial court, and we would not presume to lay down a general rule.

12. The full instruction defining malice follows:

> To establish the second essential element of the offense, it is necessary that the defendant, at the time he so injured the decedent McKenzie, have acted with malice.
>
> Now malice does not necessarily imply ill will, spite, hatred or hostility by the defendant toward the person killed. Malice is a state of mind showing a heart regardless of social duty, a mind deliberately bent on mischief, a generally depraved, wicked and malicious spirit.

> Malice may also be defined as a condition of mind that prompts a person to do a wrongful act willfully, that is, on purpose, to the injury of another, or to do intentionally a wrongful act toward another without justification or excuse.
>
> Malice may be either express or implied. Express malice exists where one unlawfully kills another in pursuance of a wrongful act or unlawful purpose, without legal excuse. Implied malice is such as may be inferred from the circumstances of the killing, as, for example, where the killing is caused by the intentional use of fatal force without circumstances serving to mitigate or justify the act, or when an act which imports danger to another is done so recklessly or wantonly as to manifest depravity of mind and disregard of human life.
>
> In determining whether a wrongful act is done with malice, you may infer that a person ordinarily intends the natural and probable consequences of acts knowingly done or knowingly omitted.
>
> If a person uses a deadly weapon in killing another person, you are permitted to draw the inference of malice from his use of such weapon, in the absence of explanatory or mitigating circumstances. You are not required to infer malice from the use of such weapon, but you may do so if you deem it appropriate.

13. Junior Bar Section, Bar Association of the District of Columbia, Criminal Jury Instructions for the District of Columbia 60–64 (1966).

14. Austin v. United States, 127 U.S.App. D.C. 180, 382 F.2d 129 (1967).

15. 132 U.S.App.D.C. 98, 405 F.2d 1368 (1968).

instruction stating that a wrongful act intentionally done was "therefore" done with malice. We said:

> A wrongful act intentionally done is not therefore done with malice. Omitted from [such a] definition of malice is the element of wilfulness, which the court elsewhere included in its definition of malice, or that the intentionally done wrongful act was without justification or excuse.[16]

As *Green* makes plain, malice cannot be equated with conduct involving no more than an intentional act. "Malice aforethought is an unjustifiable, inexcusable and unmitigated man-endangering state of mind;"[17] intent to do an injurious act, even one highly dangerous to human life, is equivalent to malice only in the absence of justification, extenuation or excuse for that state of mind. Intent may be, and often is, an ingredient of malice,[18] but never its exact counterpart. The necessary additional element is supplied only by an absence of circumstances justifying, mitigating or excusing "the man-endangering state of mind."[19]

We think, however, that appellant's reliance on *Green* is misdirected. The instruction in the present case does not feature the vice that *Green* pointed out; certainly not in so many words, nor even inferentially without ignoring the final modifying phrase—"without justification or excuse."[20] In this regard, Instruction 83, at the very worst, does no more than leave it ambiguous as to whether the final phrase modifies only the last clause of the sentence, or the first—and assertedly the offending—clause as well. And other language in Instruction 83, outside the sentence under scrutiny, connoted the "man-endangering" ingredient that a state of mind amounting to malice must possess.[21]

There is nothing, however, to suggest that the jury resolved this ambiguity by a misinterpretation of the governing law, and much to argue that it did not. The instructional flaws, if any, are subtle, a far cry from the flatly erroneous

---

16. *Id.* at 100, 405 F.2d at 1370. We explained:

> An element of both [first-and second-degree] murder is malice; but malice is not an element of manslaughter. Yet manslaughter may be and often is the intentional commission of a wrongful act. From a legal standpoint, therefore, when the court advised the jury that a wrongful act intentionally done is done with malice the effect, unless appellant were found not guilty, was to take the case out of the category of manslaughter and place it in the category of murder, notwithstanding on the facts there was an issue of manslaughter for the jury. (Footnote omitted)

*See also* United States v. Wharton, 139 U.S.App.D.C. 293, 433 F.2d 451 (Jan. 5, 1970).

17. R. Perkins, Criminal Law 48 (2d ed. 1969).

18. Even where there is no intent to kill, malice may be found in conduct evidencing a "wanton disregard of human life" coupled with an awareness by the accused of the serious danger to life caused by that conduct. United States v. Dixon, 135 U.S.App.D.C., 401, 405, 419 F.2d 288, 292 (1969) (Leventhal, J., concurring).

19. Murder, other than felony-murder, is homicide committed with malice; with premeditation and deliberation added, it is of the first degree. All other homicide, felony-murder again excluded, is manslaughter. Homicide is extenuated, and so reduced to manslaughter, when produced by an act—albeit intentional—in the heat of passion arising from adequate provocation. And, of course, an intentional act causing death is neither murder nor manslaughter if legally justified or excused. In each of the last two situations, malice is negated by the circumstances.

20. We realize, of course, that in the common law of homicide "justification" and "excuse" were terms of art not themselves embracing the concept of mitigation underlying the reduction of some types of homicide from murder to manslaughter. F. Wharton, Homicide §§ 7–9 (3d ed. 1907). We cannot believe, however, that a jury of laymen would be aware of the technical common law distinctions; we think that more naturally the jury would give those terms the broader significance, particularly in the light of the trial judge's instructions differentiating manslaughter from murder.

21. *See* note 12, *supra.*

statement in *Green*. For years, any difficulty has escaped lawyers and judges alike.[22] Moreover, a considerable part of the charge was devoted to an accurate statement of the contrasting elements of murder and manslaughter, which was perhaps the key element in the case. It is hard to believe that the jury could have been misled by imprecision in the solitary sentence under attack. Then, too, appellant's trial counsel was given ample opportunity to consider and object to the charge, and explicitly voiced his approval. This we believe, fortifies our conclusion that on the evidence in this case, the instruction had no erroneously adverse impact.

Nonetheless it must be said that Instruction 83, in distinguishing malice from mere purposefulness, is less than luminously clear. And, undeniably, clarity is extremely important in the definition of malice—"the sole element differentiating murder from manslaughter".[23] Admittedly, malice is a difficult concept to articulate; in recent times, we ourselves have struggled with the term,[24] and even now we seek to make it more meaningful to trial juries. We believe that we perform this mission best by pointing to one of our own decisions, rendered after the case at bar was tried, for the amelioration sought.

In United States v. Bush[25] we modified Instruction 83 to eliminate still another ambiguity.[26] The revised version reads:

> "Malice" does not necessarily imply ill-will, spite, hatred, or hostility by the defendant toward the person killed. "Malice" is a state of mind showing a heart regardless of the life and safety of others, a mind deliberately bent on mischief, a generally depraved, wicked and malicious spirit. "Malice" may also be defined as the condition of mind which prompts a person to do willfully, that is, on purpose, without adequate provocation, justification or excuse, a wrongful act whose foreseeable consequence is death or serious bodily injury to another.[27]

This definition should be used in instructions given after the *Bush* decision to avoid a claim of reversible error based either on the challenge appellant has presented, or on other difficulties in Instruction 83.[28]

Affirmed.

ROBB, Circuit Judge, (concurring):

I concur in the affirmance of the judgment; however, I must respectfully disagree with the majority's criticism of the prosecutor. The portions of his closing argument which are quoted in the opinion are fragments taken out of context. Also, no reference is made to the argument of the defendant's counsel

---

22. *See, e. g.*, Sims v. United States, 132 U.S.App.D.C. 111, 114, n. 5, 405 F.2d 1381, 1384 n. 5 (1968).

23. United States v. Wharton, *supra* note 16 at 296, 433 F.2d at 454.

24. Green v. United States, *supra* note 15; Sims v. United States *supra* note 22; Logan v. United States, 133 U.S.App.D. C. 365, 411 F.2d 679 (1969); United States v. Bush, 135 U.S.App.D.C. 67, 416 F.2d 823 (1969); United States v. Dixon, *supra* note 18; United States v. Wharton, *supra* note 16; Mitchell v. United States, 140 U.S.App.D.C. 209, 214–215, 434 F.2d 483, 488–489 (decided May 13, 1970).

25. *Supra* note 24.

26. *Bush* eliminated Instruction 83's implication "that any violation of 'social duty' or 'duty', even though not dangerous to life or limb, may be equated to malice." *id.* 135 U.S.App.D.C. at 70, 416 F.2d at 826, by focusing attention instead on the need to find a "man-endangering state of mind" before concluding that someone acted with malice. *See* page 696, *supra*.

27. United States v. Bush, *supra* note 24, 135 U.S.App.D.C. at 70, 416 F.2d at 826.

28. *See* note 26, *supra*.

to which the prosecutor was responding. In that argument counsel painted with a broad brush and with considerable fervor. He accused the prosecutor of attempting to inflame the jury. He repeatedly referred to his client as "Robert" although the prosecutor had not done so in his opening argument. Counsel spoke of "Robert's" industry, his service in the Navy, his humble abode. He quoted from the Bible. After reading from the transcript of the prosecutor's opening statement, he said:

> "What disturbs me, and what disturbs you, no doubt, is that some people believe that you recompense no man evil for evil. Some people believe that you love those who mistreat you. And some people believe that hatred has no place in your heart. The famous recording of history may be summed up in a few words, 'Forgive them for they know not what they do.'"

Counsel suggested that the jurors should judge not, that they be not judged. He said that "Robert" was "telling the truth, no question about it",[1] and asked "What would he gain by lying?". In short, counsel delivered a wide-ranging, free-style jury argument.

It was in response to these statements by the appellant's counsel that the prosecutor made the remarks which are criticized by the majority. Although one of us might not have answered as the prosecutor did, I think we should consider his remarks in context, and in the context of the argument that provoked them. When so considered they do not, in my judgment, merit the majority's criticism.

I suggest in addition that we should be reluctant to condemn an argument by the prosecutor which evoked no complaint from the defendant's experienced and able counsel, who heard it, and who apparently accepted it as fair comment on his own remarks.

---

1. *See* Canons of Professional Ethics Canon 15. " * * * It is improper for a lawyer to assert in argument his personal belief in his client's innocence or in the justice of his cause. * * *."