**STATE of Tennessee, Appellant,**

v.

**Darel BOLIN, Appellee.**

Supreme Court of Tennessee,
at Nashville.

Oct. 9, 1984.

William M. Leech, Jr., Atty. Gen., Kimberly J. Dean, Asst. Atty. Gen., Nashville, for appellant.

Gary M. Howell, Columbia, for appellee.

## OPINION

FONES, Justice.

The issue in this case is whether a jury instruction which states that "the use of a deadly weapon ... raises a presumption of malice, unless rebutted by other facts and circumstances to the contrary" unconstitutionally shifts the burden of persuasion on the element of malice from the State to the defendant.

Defendant was convicted in the trial court of assault with intent to commit murder in the first degree after the above instruction was charged to the jury. The Court of Criminal Appeals found the charge to be constitutionally defective, reduced the offense to aggravated assault,

set the punishment at the minimum, two years but gave the State the option of rejecting that punishment for a new sentencing hearing to determine the punishment for the offense of aggravated assault.

The relevant facts are summarized by the intermediate appellate court as follows:

The victim, Dennis Pugh, and his wife, Mary Jo, had been separated and were experiencing marital difficulties. On September 30, 1981, Mr. Pugh visited his wife at their home in Maury County to discuss a reconciliation. Between 12:00 and 12:30 p.m., the victim heard noises outside the house and went out the back door to investigate. As he walked around the house, the appellant jumped out from behind a bush, took a police stance, and shot the victim in the abdomen. Mr. Pugh turned and began running, but appellant continued to unleash a fussilade of bullets in his direction. The victim suffered wounds to the head, face, and abdomen, resulting in surgery and a stay in the hospital for eleven or twelve days.

Mrs. Pugh admitted in testimony that appellant had been her paramour for a short time prior to the shooting incident. On the evening in question, she was upset and crying about a problem with her teenage son, but she and her husband did not argue or raise their voices. Both the victim and his wife were able to positively identify appellant as the assailant.

The appellant did not testify but did call his sister as a witness. She related that Mr. Pugh was aware of the affair prior to the shooting.

The instruction in question was taken from Tennessee Pattern Jury Instructions, Criminal 8.03 and reads as follows:

(3) that the attempted killing was malicious; that is, that the defendant was of the state of mind to do the alleged wrongful act without legal justification or excuse; <u>the use of a deadly weapon by a party who assaults another with intent to commit murder in the first degree raises a presumption</u>

<u>of malice, unless rebutted by other facts and circumstances to the contrary.</u> A deadly weapon is any weapon or instrument which from the manner in which it is used or attempted to be used is likely to produce death or great bodily injury; (Emphasis added.)

The underlined portion is the critical part that poses the constitutional issue.

## I.

The Court of Criminal Appeals relied upon *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979) and *Phillips v. Rose,* 690 F.2d 79 (6th Cir.1982), in finding the jury instruction unconstitutional and, of course, defendant insists that those cases require that result. The State contends that the Court of Criminal Appeals read *Sandstrom* and *Phillips* too narrowly, that viewed in the context of the overall charge, the words of the Court merely described a permissive inference. In addition, the State urges that if the instruction was erroneous, it was harmless error.

In our opinion, *Sandstrom* does not require that we find the jury instruction in this case to be unconstitutional. Sandstrom was charged with "deliberate homicide" defined in the Montana Statute as a criminal homicide committed, "purposely or knowingly." Sandstrom admitted the homicide at his trial in the Montana State Court, but insisted that he did not commit the crime "purposely or knowingly" and was therefore guilty of only a lesser offense. His lawyer argued that the jury instruction, "[t]he law presumes that a person intends the ordinary consequences of his voluntary acts" had the effect of shifting the burden of proof to defendant on the issue of whether defendant acted "purposely or knowingly," a due process of law violation under the federal constitution. The Supreme Court noted that defense counsel's offer to provide the trial judge with federal decisions in support of that position evoked the response, "You can

give those to the Supreme Court. The objection is overruled."

The Supreme Court said that the threshold inquiry in determining the constitutionality of that kind of jury instruction was to determine the nature of the presumption it described, which determination required

"careful attention to the words actually spoken to the jury, see *id.*, [*Ulster County Court v. Allen*, 442 U.S. 140, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979)] at 157–159, n. 16, 99 S.Ct., at 2225, for whether a defendant has been accorded his constitutional rights depends upon the way in which a reasonable juror could have interpreted the instruction." *Id.* 442 U.S. at 514, 99 S.Ct. at 2454.

Apparently, the "nature" of presumptions must be gleaned from *Ulster* and the lengthy footnote at 99 S.Ct. page 2225 of that opinion. In *Ulster*, the Court was distinguishing between two types of evidentiary devices, the entirely permissive inference and the mandatory presumption. The permissive inference allows, but does not require, the triers of fact to infer the elemental fact from proof by the State of the basic fact and places no burden of any kind on the defendant. The mandatory presumption tells the triers of fact that they must find the elemental fact upon proof of the basic fact unless defendant comes forward with some evidence to rebut the presumed connection between the two facts.

In *Sandstrom*, the Supreme Court noted that the state had admitted that it was "possible" that the jury believed that they were required to apply the presumption. The Court then moved swiftly to its conclusion, as follows:

"Sandstrom's jurors were told that '[t]he law presumes that a person intends the ordinary consequences of his voluntary acts.' They were not told that they had a choice, or that they might infer that conclusion; they were told only that the law presumed it. It is clear that a reasonable juror could easily have viewed such an instruction as mandatory. See generally *United States v. Wharton*, 139

U.S.App.D.C. 293, 298, 433 F.2d 451, 456 (1970); *Green v. United States*, 132 U.S. App.D.C. 98, 99, 405 F.2d 1368, 1369 (1968). See also Montana Rule of Evidence 301(a).[4]

*Id.* 442 U.S. at 515, 99 S.Ct. at 2454.

[4] 'Rule 301. (a) Presumption defined. A presumption is an assumption of fact *that the law requires to be made* from another fact or group of facts found or otherwise established in the action or proceeding.' (Emphasis added.)"

Next, the Supreme Court concludes that a reasonable jury could have interpreted the jury instruction, "as a direction to find intent upon proof of the defendant's voluntary actions (and their 'ordinary' consequences), unless *the defendant* proved the contrary by some quantum of proof which may well have been considerably greater than 'some' evidence—thus effectively shifting the burden of persuasion on the element of intent." (Court's emphasis.) *Id.* 442 U.S. at 517, 99 S.Ct. at 2456. That conclusion, like the conclusive presumption defect, was bottomed upon the force of the words "the law presumes" and the failure of the trial judge to instruct the jury that the presumption could be rebutted.

Montana's Rules of Evidence expressly state that the presumption at issue could be overcome only, "by a preponderance of evidence contrary to the presumption." The Supreme Court concluded that both the burden of production and the ultimate burden of persuasion on the issue of intent were thus shifted to defendant in violation of the due process principle that protects the accused against conviction, except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which defendant was charged.

## II.

■ The words of the presumption, the immediate context in which they appear, and the overall context of the jury instructions, remove this case from the due process trap adjudicated in *Sandstrom*, in our opinion.

In the immediate context of the reference to the presumption of malice, the trial

judge prefaced the delineation of the six separate elements of the offense as follows:

For you to find the defendant guilty of assault with intent to commit murder in the first degree, the state must have proven beyond a reasonable doubt:

(1) that the defendant unlawfully assaulted the alleged victim;

(2) that the defendant intended to commit the specific felony of murder in the first degree;

(3) that the attempted killing was malicious; that is, that the defendant was of the state of mind to do the alleged wrongful act without legal justification or excuse; the use of a deadly weapon by a party who assaults, another with intent to commit murder in the first degree raises a presumption of malice, unless rebutted by other facts and circumstances to the contrary....

The words of the presumption that, "the use of a deadly weapon ... raises a presumption of malice," is more permissive than, "the law presumes that a person intends the ordinary consequences of his voluntary acts." The instruction in the instant case immediately stated that the presumption may be "rebutted by other facts and circumstances to the contrary" and there was no suggestion that those facts and circumstances must have been established by the defendant or that he had any burden of proof whatever with respect to them. The *Sandstrom* court repeatedly emphasized the significance of the failure to tell the jury that the presumption could be rebutted.

The instructions at the conclusion of this portion of the charge were as follows:

"If you find the defendant not guilty of assault with intent to commit murder in the first degree, as charged in the indictment, or if you have a reasonable doubt thereof, then your verdict must be not guilty as to this offense, and then you shall proceed to determine his guilt or innocence of the lesser included offense of aggravated assault."

The court then analyzed several other included offenses, cautioning with respect to each that the State had the burden of proof as to every element. It concluded with the following:

"The jury should review all the evidence and determine the question of the guilt or innocence of the defendant, and if you find that the defendant made the assault as alleged, with the intent to injure the person assaulted, he would be guilty of some one of the grades of the offense included in the indictment.

If you find from the evidence, beyond a reasonable doubt, that the defendant is guilty of one of the grades of assault as above set out, you should convict him and say in your verdict what grade of offense is designated."

The jurors were then instructed that if they found the defendant not guilty of any grade of assault or if they had a reasonable doubt thereof, then their verdict should be not guilty as to an assault, and they should proceed to determine guilt or innocence with respect to the carrying of a dangerous weapon as charged in the second count of the indictment.

Again, when giving instructions as to the possible sentences, the court cautioned the jurors that they should impose a sentence only after finding guilt beyond a reasonable doubt.

The Supreme Court has consistently recognized that, "a single instruction to a jury may not be judged in artificial isolation but must be viewed in the context of the overall charge." *Cupp v. Naughten*, 414 U.S. 141, 146–147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973). We think the overall charge in this case virtually precluded a legal finding by any reasonable court that a reasonable jury could have interpreted the questioned language as a conclusive presumption or as shifting the burden of proof to defendant on the single element of malice.

In this jurisdiction, almost from statehood, trial judges in felony cases have been required by statute to give their jury instructions in writing. The statutes required that every word of the instructions

be written. They precluded oral instructions or "summing up" as had once been the practice in colonial days.

These strictures are carried forward into the present Rules of Criminal Procedure. Rule 30(c) expressly requires that in the trial of all felonies, except where there is a guilty plea,

"... every word of the judge's instructions shall be reduced to writing before being given to the jury."

The Rule further provides that the written charge shall be read to the jury and taken by it to the jury room so that the jury

"... shall have possession of the written charge during its deliberations...."

The written charge is required to be returned to the judge by the jurors at the conclusion of their deliberations.

The original jury instructions given in the present case are included in the record. They cover eighteen pages of legal-size paper, double spaced. It is, of course, possible to look at phrases or clauses on some of these pages and take matters out of context, but a "reasonable" juror is not supposed to consider this or any other written document in such a manner. Indeed, at the outset of the instructions, the trial judge stated to the jurors the following:

"The law applicable to this case is stated in these instructions, and it is your duty to *carefully consider all of them. The order in which these instructions are given is no indication of their relative importance. You should not single out one or more of them to the exclusion of another or others but should consider each one in the light of and in harmony with the others.*" (Emphasis added.)

Shortly thereafter, the instructions state:

"The law presumes that the defendant is innocent of the charges against him. *This presumption remains with the de-fendant throughout every stage of the trial,* and it is not overcome unless from all the evidence in the case you are convinced beyond a reasonable doubt that the defendant is guilty.

The state has the burden of proving the guilt of the defendant beyond a reasonable doubt, *and this burden never shifts but remains on the state throughout the trial of the case. The defendant is not required to prove his innocence.*" (Emphasis added.)

Further, the instructions stated:

"The state must prove beyond a reasonable doubt all of the elements of the crime charged, that the crime, if in fact committed, was committed by this defendant in Maury County, Tennessee, and that it was committed before the finding and returning of the indictment in this case."

The trial judge then proceeded to analyze the elements of the various offenses included within the indictment. Carefully, time after time, he cautioned the jurors that the State must prove each and every element of each offense beyond a reasonable doubt,[1] and that if they found that the State had not carried this burden of proof, they should acquit the accused of that offense.

We conclude that no reasonable jury could have interpreted the challenged instruction as mandatory or conclusive or as shifting to the defendant the burden of persuasion on the element of malice.

In the wake of *Sandstrom,* no state court of last resort can fail to recognize that it is prudent to warn trial judges that the word "presumption" should not be used, except in instructing on the presumption of innocence.[2] In its place juries may be instructed that a permissible inference may or may not be drawn of an elemental

---

1. The jurors were told at least thirty times during the course of the instructions that they could not impose any penalty or punishment upon the accused unless they found that the State had established his guilt beyond a reasonable doubt.

2. It would seem that consistency would require that any jury that interpreted the presumption with regard to malice in this case as conclusive would also have to construe the presumption of innocence as conclusive.

fact from proof by the State of a basic fact, but that such inference may be rebutted and the inference places no burden of proof of any kind upon defendant.

### III.

 The State insists that even if unconstitutional the instruction was harmless in this case and we agree. Whether the harmless error doctrine can be applied to *Sandstrom*-type errors has not been definitively ruled upon by the United States Supreme Court. In *Connecticut v. Johnson*, 460 U.S. 73, 103 S.Ct. 969, 74 L.Ed.2d 823 (1983), the Court split four to four on this issue, with the remaining justice not reaching it. A number of circuits, including the Sixth, have held that the harmless error analysis is appropriate when reviewing *Sandstrom* errors under certain circumstances. *Garland v. Maggio*, 717 F.2d 199 (5th Cir.1983); *Spencer v. Zant*, 715 F.2d 1562 (11th Cir.1983); *Engle v. Koehler*, 707 F.2d 241 (6th Cir.1983); *Conway v. Anderson*, 698 F.2d 282 (6th Cir.1983). We will apply the harmless error doctrine to this category of errors when we find from the record as a whole that the challenged instruction was harmless beyond a reasonable doubt.

Defendant and Mrs. Pugh, the wife of the victim, were having an affair but on the date of this offense Mr. Pugh, the victim, was spending the evening with his wife and they were discussing reconciliation. Defendant telephoned and Mrs. Pugh told him she was too upset to talk to him but he called again and hung up when Mr. Pugh answered. Later, the Pughs heard noises outside the house and eventually when Mr. Pugh went outside to investigate he was attacked by defendant. Mr. Pugh was unarmed and was fleeing with his back to defendant when six of the eight shots were fired. We think most reasonable jurors would readily reach the conclusion from these facts that defendant's motivation was to eliminate his lover's husband, an obviously malicious state of mind. The force of that conclusion was so overwhelmingly evident that in our opinion the challenged

instruction was insignificant and harmless beyond a reasonable doubt.

The judgment of the Court of Criminal Appeals is reversed. The verdict and judgment of conviction in the trial court is affirmed.

COOPER, C.J., and BROCK, HARBISON and DROWOTA, JJ., concur.