STATE of Tennessee, Appellee,

v.

Willie James MARTIN, Appellant.

Supreme Court of Tennessee,
at Jackson.

Dec. 30, 1985.

Marvin E. Ballin, W. Mark Ward, Memphis, for appellant.

Wm. Barry Wood, Asst. Atty. Gen., W.J. Michael Cody, Atty. Gen. & Reporter, Nashville, for appellee.

OPINION

HARBISON, Justice.

In a two-count indictment appellant was charged with murder in the first degree, the first count charging felony-murder during an attempted robbery and the second count charging deliberate, malicious, willful and premeditated homicide.

The jury acquitted appellant of the felony-murder charge but found him guilty on the second count of premeditated murder. At a separate sentencing hearing appellant was sentenced to death by electrocution.

Among several issues presented on appeal, appellant challenges legal sufficiency of the convicting evidence.

The victim of the homicide was Alvin Griffin, who was forty-five years of age. He was shot to death by appellant at about 9:30 p.m. on the evening of November 1, 1980, on Calhoun Street in Memphis. Mr. Griffin was the treasurer of a Masonic lodge chapter, and he had attended a meeting of the lodge just prior to his fatal encounter with appellant.

The lodge hall fronted on the north side of Calhoun Street, an east-west thoroughfare, the building being situated a short distance to the east of the intersection of Calhoun Street and St. Martin, which runs north and south. Just to the west of the lodge building was a small printing shop, and then an establishment known as Ann's Grill. Just west of this place of business was a small vacant lot which was situated at the actual intersection of the two streets.

After leaving the lodge hall, Mr. Griffin took two briefcases to his automobile, which was parked near the southwest corner of the intersection. He then told a friend that he intended to return to the lodge for a short time, and it was during

his attempt to do so that he was encountered by appellant on the street in front of Ann's Grill.

Appellant was thirty-six years of age and had been living in St. Louis for several years prior to the summer of 1980. He had returned a few months prior to the night in question, and on that night he had left the residence where he was staying and had visited two other bars or restaurants before going to Ann's Grill. He was carrying a loaded revolver, claiming that he was doing so to keep the weapon away from a younger brother who he feared might use it improperly. Griffin was unarmed.

As appellant emerged from Ann's Grill there was an encounter between him and Griffin. Four eyewitnesses testified that they saw the two men struggling, and several of them testified that Griffin was urging appellant to let him go. It appeared to the witnesses that appellant was attempting to pull Griffin around the corner of Calhoun Street onto St. Martin. Appellant drew his weapon, struck Griffin in the head with it and then fired a shot at point-blank range which entered Griffin's left ear and penetrated the brain. Griffin died a short time later, apparently without regaining consciousness. Appellant fled the scene on foot. Two witnesses testified that he was carrying in his hands some object which they thought to be a paper bag that he had seized from Griffin. One witness followed him in her automobile and testified that after he ran around a corner, he put on a different coat or jacket and pulled his trouser legs from inside his boots and lowered them to cover the boots. She testified that he was laughing and joking with some other companions.

Appellant denied these allegations and testified that the shooting was entirely accidental. He said that Griffin accosted him and stated that he felt that the two men must have met previously. Appellant denied having ever seen or met Griffin before, but he said that their encounter grew increasingly hostile and that Griffin grabbed him by his coat lapel. He said that the two men were shoving each other

and that since Griffin was the larger man appellant drew his pistol and struck his assailant. When he tried to strike him a second time the pistol accidentally discharged, and appellant fled.

Appellant had a prior criminal record, a conviction for murder in the second degree in 1968. Mr. Griffin was apparently an exemplary citizen and a respected member of his lodge. The evidence reveals no prior criminal record or misconduct whatever on his part.

The two briefcases which Mr. Griffin had carried from the lodge were found locked in his automobile after he had been taken to the hospital. Neither his wallet nor any other property belonging to him was taken by appellant, as far as the record indicates, except that two witnesses indicated that they saw appellant seize or take something from Griffin which they thought to be a paper bag. Appellant denied this and said that he simply had his hat in his hand as he was running from the scene.

The issues were sharply drawn and the credibility of both appellant and the State's witnesses presented a classic question for determination by the jury. Apparently having doubt that an attempted robbery had occurred, the jury acquitted appellant on the felony-murder count but found him guilty of premeditated murder.

While the evidence was somewhat close on the question of premeditation and malice, nevertheless we are of the opinion that it was sufficient for submission to the jury. Premeditation is a question of fact to be determined by the jury from all the circumstances surrounding the homicide. *Houston v. State*, 593 S.W.2d 267, 273 (Tenn.1980). Some of the circumstances shown here which in other cases have been found sufficient to support a finding of premeditation are: (1) the victim was retreating or attempting to escape when shot, *Everett v. State*, 528 S.W.2d 25, 28 (Tenn.1975); (2) the victim was unarmed and offered no provocation, *State v. Bullington*, 532 S.W.2d 556, 560 (Tenn.1976); and (3) the accused was cool and calm immediately after the homicide, having

been seen by one witness to be laughing and joking with companions, *Sneed v. State*, 546 S.W.2d 254, 258 (Tenn.Crim.App. 1976). The bullet which killed the victim was fired from point-blank range, as close as one inch according to the testimony of a pathologist. Appellant had struck the victim at least once prior to shooting him. Repeated blows or shots may support an inference of premeditation. *See Houston v. State*, 593 S.W.2d 267, 273 (Tenn.1980). It is also possible that the jury could have found that during the struggle appellant decided to kill the victim, only a moment of time being required between the plan to kill and its execution. *Clarke v. State*, 218 Tenn. 259, 402 S.W.2d 863, 868 (1966).

We are unable to conclude as a matter of law that the evidence as to premeditation and willfulness is insufficient. In our opinion jury questions were presented as to all of the elements of murder in the first degree.

Since the proof of guilt was highly controverted, however, the jury instructions on the elements of murder in the first degree were particularly important, especially those involving the element of malice.

▮ Malice is an essential element of both murder in the first degree and murder in the second degree.[1] It may be inferred by the trier of fact from the use of a deadly weapon. *Sikes v. State*, 524 S.W.2d 483, 485 (Tenn.1975). In that connection, however, in the jury instructions on murder in the first degree all that the trial judge told the jury concerning the element of malice was that the State must prove beyond a reasonable doubt:

"(2) that the killing was malicious; that is, that the defendant was of the state of mind to do the alleged wrongful act without legal justification or excuse. If it is shown beyond a reasonable doubt that the alleged victim was killed, the killing is presumed to be malicious in the absence of evidence which would rebut the implied presumption; ..."

▮ In the section of the charge dealing with murder in the first degree, this was the only instruction or explanation given with respect to the element of malice. The term was not further defined. In a separate section on murder in the second degree, full explanations of malice, express and implied, were given.[2] The Court there repeated the instructions that all homicides are presumed to be malicious in the absence of evidence which would rebut the "implied presumption." In that section there was an additional sentence, stating that the presumption could be rebutted by either direct or circumstantial evidence regardless of whether the evidence was offered by the defendant or by the State. In brackets on the form instructions which were handed to the jurors was a further instruction concerning a presumption of malice sufficient to support a conviction of murder in the second degree where the homicide resulted from the use of a deadly weapon. Here it was stated that "there is raised a presumption of malice sufficient to support a conviction of murder in the second degree unless it is rebutted by other facts and circumstances."[3]

There followed other instructions as to the included offense of voluntary manslaughter and involuntary manslaughter, and then general instructions concerning the presumption of innocence and reasonable doubt.

▮ The proposed jury instructions were discussed in detail by counsel and the trial

1. T.C.A. §§ 39–2–201, 202, 211.

2. In first degree murder cases as well as those in the second degree, malice may be either express or implied, but the instructions given here make no such explanation. *See Turner v. State*, 119 Tenn. 663, 108 S.W. 1139 (1907).

3. As stated later in this opinion, the term "presumption" should no longer be used. A permissible inference of malice could be drawn from use of a deadly weapon in first degree murder cases as well as in second degree cases. *Sikes v. State*, 524 S.W.2d 483, 485 (Tenn.1975). The instructions given here, based on Tennessee Pattern Instructions—Criminal No. 20.01, do not so indicate except insofar as that pattern instruction states that all homicides are "presumed" to be malicious unless the "implied presumption" is rebutted.

judge in the absence of the jury, but the foregoing instructions with respect to malice were not objected to at the trial nor raised as issues in the motion for a new trial. Nor were any special requests for instructions directed to the issue of malice. Ordinarily, therefore, any issue regarding these instructions would be deemed to be waived.

■ In death penalty cases, however, this Court is required by statute to review the sentence and to consider significant errors whether or not called to the attention of the trial court. *See State v. Duncan,* 698 S.W.2d 63 (Tenn.1985); *see also* T.C.A. § 39-2-205(a).

Since the decision of the Supreme Court of the United States in the case of *Sandstrom v. Montana,* 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979) the use of the term "presumption" in jury instructions has been constitutionally suspect, except for the presumption of innocence. The Court reiterated the principles of the *Sandstrom* case in the recent decision of *Francis v. Franklin,* 471 U.S. ——, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985), emphasizing that no element of a criminal offense is to be presumed, and that jury instructions must not cause a reasonable juror to believe that the accused has the burden of proof as to any element of the offense on trial.

■ In *State v. Bolin,* 678 S.W.2d 40, 44–45 (Tenn.1984) this Court warned

that trial judges should avoid the use of the term "presumption" in instructing juries in criminal cases except for the presumption of innocence. There the Court said:

> "In its place juries may be instructed that a permissible inference may or may not be drawn of an elemental fact from proof by the State of a basic fact,[4] but that such inference may be rebutted and the inference places no burden of proof of any kind upon defendant."

The Committee of the Tennessee Judicial Conference responsible for preparing pattern instructions for use in Tennessee trial courts has promulgated Criminal Pattern Instruction No. 37.19 (Tennessee Pattern Jury Instructions, 1985 Supp.) which emphasizes these principles. That instruction was not given in the present case. However, in fairness to the trial judge, it should be pointed out that the present case was tried in 1983 prior to the opinion of this Court in *Bolin, supra.*

■ Nevertheless, we are of the opinion that the charge on malice contained in the first degree murder instructions, standing alone, was inadequate. It did not use the term "inference," but instead used "presumption." It did not explain that rebuttal could be established by evidence from the State or from the accused. It contained an inadequate explanation of the term "malice."[5] It was preceded by general instructions that the State must establish each of the elements of the offense

---

4. Of course, inferences can be properly drawn from proof offered by the defendant as well, where the defense elects to introduce evidence.

5. Even though some repetition or cross-references may be involved, in our opinion the court's instructions as to each offense defined for the jurors to consider should be complete within themselves. In Tennessee the jury instructions in felony cases must be reduced to writing and, after being read orally, delivered to the jurors for use in their deliberations. Rule 30(c) T.R.Crim.P. In the present case the only definition of "malice," express or implied, was contained in the instructions on murder in the second degree.

We note that the instructions given by the trial judge in this case followed former T.P.I.–Crim. 20.01 verbatim, but to the extent that this

pattern instruction contains no further explanation of malice and to the extent that it misuses the term "presumption" as heretofore indicated, it is expressly disapproved, and it should no longer be followed. This pattern instruction was revised in April 1985, and the new form appears to meet the requirements of this opinion. These pattern instructions are not officially approved by this Court or by the General Assembly and should be used only after careful analysis of the case on trial. They are merely "patterns" or suggestions and serve no other purpose. It is the responsibility of the trial judge to prepare the jury instructions, and while previously printed forms may be convenient, these must be revised or supplemented if necessary in order to state the applicable law fully and accurately.

beyond a reasonable doubt. Other general instructions repeated that proposition although not nearly to the extent as did the instructions in *Bolin, supra.* Without some further explanation such as that contained in T.P.I. 37.19, *supra,* we are of the opinion that a reasonable juror could have misunderstood the instructions on malice, and that they were not constitutionally sufficient in light of *Sandstrom* and *Francis, supra.*

Because of the closeness of the issues and because the proof of necessity required the jury to draw inferences and to decide questions of credibility, we cannot say that the error in this case was harmless beyond a reasonable doubt. Accordingly we are constrained to reverse the judgment of the trial court and to remand this cause for a new trial.

We have considered all of the other issues raised in the brief of appellant, and we find them to be without merit. As previously stated, we are of the opinion that the convicting evidence was sufficient to present an issue for determination by the jury with respect to murder in the first degree. This Court has previously passed upon the constitutional attacks upon the death penalty made by appellant and upon the question of individual *voir dire* of prospective jurors. *See generally State v. Caldwell,* 671 S.W.2d 459 (Tenn.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 231, 83 L.Ed.2d 160 (1984); *State v. McKay,* 680 S.W.2d 447 (Tenn.1984); *State v. Workman,* 667 S.W.2d 44 (Tenn.1984).

■ At the sentencing phase a member of the staff of the Criminal Court Clerk testified about the prior conviction of appellant for murder in the second degree. Inadvertently, and almost incidentally in her testimony, she referred to the fact that he had been indicted for murder in the first degree but was convicted of murder in the second degree. Appellant assigns this testimony as error, but in our opinion the testimony of the clerk was nothing more than a part of identifying her records. This was not an attempt by the State to prove some prior accusation, arrest or in-

dictment such as was found to constitute error in *State v. Buck,* 670 S.W.2d 600 (Tenn.1984), *State v. Teague,* 645 S.W.2d 392 (Tenn.1983) and other cases. Nevertheless, upon retrial, the reference to the fact that the accused had been indicted for a higher offense and convicted of a lesser offense should be avoided.

■ Appellant offered two special requests with respect to his plea of self-defense. In our opinion the instructions given by the trial judge adequately covered this issue. Nor do we find any error in permitting a witness to testify as to her sensory perception or conclusion that appellant was attempting to pull Mr. Griffin around the corner during the course of their struggle.

All of the issues raised by appellant are overruled except those pertaining to the jury instructions referred to above. The judgment of the trial court is reversed and the cause is remanded for a new trial at the cost of the State.

COOPER, C.J., FONES, J., and McLEMORE, Special Justice, concur.

BROCK, J., files partial dissent.

BROCK, Justice, concurring in part; dissenting in part.

With respect to the constitutionality of the death penalty, I adhere to the views expressed in my dissenting opinion in *State v. Dicks,* Tenn., 615 S.W.2d 126, 132 (1981); in all other respects I concur in the opinion of the Court.