**Robert A. WALDEN, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 06–CF–297.

District of Columbia Court of Appeals.

Argued March 15, 2011.

Decided May 12, 2011.

---

347

Marie Park, appointed by the court, for appellant.

Peter S. Smith, Assistant United States Attorney, with whom Ronald C. Machen,

Jr., United States Attorney, and Elizabeth Trosman, Chrisellen R. Kolb, and Amanda Haines, Assistant United States Attorneys, were on the brief, for appellee.

Before BLACKBURNE–RIGSBY, Associate Judge, KRAMER,* Associate Judge, Retired, and FARRELL, Senior Judge.

FARRELL, Senior Judge:

A jury found appellant guilty of the first-degree premeditated murder by shooting of Kalfani Hogg, conspiracy to assault Hogg and Kwame Walcott with a dangerous weapon, assault on Walcott with a dangerous weapon, and related weapons offenses. Evidence fairly allowed the jury to find that appellant enlisted Melba Norris and Shacona Gooding to lure Hogg to the Lincoln Heights area where appellant, armed with a sawed-off shotgun, lay in wait intending to avenge what he believed had been Hogg's rape of Norris. When Hogg arrived accompanied by Walcott, appellant forced them into the hallway of a building, told both to "lay down," and, after accusing Hogg of the rape, shot him in the head and neck, causing his death.

## I.

■■■ On appeal, appellant first argues that the trial judge erred in instructing the jury, as to first-degree murder and the proof requirement of intent to kill, that if the jury found that appellant had used a weapon and "[i]f use of the weapon under all of the circumstances [would] naturally and probably have resulted in death," it could ("you may") conclude "that the defendant had the specific intent to kill," but that it was "not required to reach [that] conclusion."[1] Although he now contends that this instruction unconstitutionally relieved the government of the burden of proof of his intent to commit first-degree murder, appellant made no corresponding objection at trial, and therefore must demonstrate plain error. *See United States v. Olano*, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). There was no error, much less plain error, in giving the instruction.

■■■ Where a defendant's state of mind is at issue in a criminal case, the standard instructions in this jurisdiction allow the judge to instruct the jury that "[y]ou may infer, but are not required to infer, that a person intends the natural and probable consequences of acts s/he intentionally did or did not do." Criminal Jury Instructions, *supra* note 1, No. 3.101. A permitted inference of this kind, embodied in a jury instruction, is a commonplace in the criminal law.[2] Of course, the inference

---

* Judge Kramer was an Associate Judge of the court at the time of oral argument. Her status changed to Associate Judge, Retired on May 1, 2011.

1. The judge initially told the jury that the permissible inference applied both to a finding of specific intent and to whether appellant "acted in conscious disregard of an extreme risk of death or serious bodily injury." *See* Criminal Jury Instructions for the District of Columbia, No. 4.201 B., at 4–55 (5th ed. 2010). When reminded by defense counsel that the jury would not be instructed on second-degree murder, the judge recited the instruction again to the jury, directing them to disregard the "language regarding acting in conscious disregard of an extreme risk of injury." The defense lodged no further objection to the instruction.

2. Professor LaFave explains its justification:

   It is not always easy to prove at a later date the state of a man's mind at that particular earlier moment when he was engaged in conduct causing or threatening harm to the interests of others. He does not often contemporaneously speak or write out his thoughts for others to hear or read. He will not generally admit later to having the intention that the crime requires. So of course his thoughts must be gathered from

allowed may not be cast in mandatory terms or in the form of a presumption, conclusive or in any sense burden-shifting. *Sandstrom v. Montana*, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979); *Green v. United States*, 132 U.S.App.D.C. 98, 405 F.2d 1368 (1968). And the instruction must make clear to the jury, as No. 3.101 does, that the jury should consider all the circumstances in evidence that it thinks relevant in deciding whether the government has proved the necessary intent beyond a reasonable doubt. Appellant views our decision in *Wilson–Bey v. United States*, 903 A.2d 818 (D.C.2006) (en banc), as casting doubt on the validity of the instruction, but he is mistaken. We expressly refused to call into question there the instruction that the "jury may—but is not required to—infer that 'a person intends the natural and probable consequences of [his or her] acts knowingly done or knowingly omitted.'" *Id.* at 839 n. 38.

Appellant argues, however, that the vice in the instruction given in this case was that it singled out a portion of the evidence for mention, *i.e.*, the proof that he had used a weapon,[3] thus deflecting the jury's attention from the other evidence in the case. But that argument too is defeated by settled authority, because, as Judge Leventhal recognized for the court in *Bel-*ton v. United States, 127 U.S.App.D.C. 201, 205, 382 F.2d 150, 153–54 (1967), "It is both desirable and necessary to instruct the jury that they may infer the existence of malice from other evidentiary facts, including the deadly nature of the weapon utilized."[4] The reason, LaFave explains, is the obvious one that a person "who intentionally kills another does not often announce to bystanders, 'I have in my mind an intent to kill' at the moment, or just before or after, he kills." LaFave, Criminal Law, *supra* note 2, § 14.2(b), at 774–75 (footnotes omitted).

> How then can the prosecution prove beyond a reasonable doubt that when he killed he intended to kill? Obviously this intent must be gathered from all the circumstances of the killing—the killer's actions and his words (if any) in the light of the surrounding circumstances.

*Id.* at § 14.2(b), at 775.[5] The instruction here properly told the jury that, if it decided that appellant had used a weapon, it could consider "the nature of the weapon, the way [he] used it and other circumstances surrounding its use," and "[i]f use of the weapon under all of the circumstances would naturally and probably have resulted in death," the jury could—but was not required to—infer that he intended to kill the victim.

---

his words (if any) and actions in the light of all the surrounding circumstances. Naturally, what he does and what foreseeably results from his deeds have a bearing on what he may have had in his mind.

Wayne R. LaFave, Criminal Law § 5.2(f), at 271 (5th ed. 2010).

3. The standard instruction given, No. 4.201 B., begins by saying that "[Y]ou have heard evidence that [the defendant] used a weapon."

4. As this court later explained in *Comber v. United States*, 584 A.2d 26, 38–40 (D.C.1990) (en banc), the common-law notion of "malice aforethought" embraces multiple states of mind, including a "specific intent to kill" applicable to murder in the first degree.

5. Of course, as before:

> it is necessary to express the idea, not in terms of a mandatory presumption, but in terms of a permissive inference: it may properly be inferred (*i.e.*, the conclusion *may* be drawn, rather than *must* be drawn, in the absence of counter proof) from the fact that the killer intentionally used a deadly weapon upon the deceased that he intended to kill the deceased.

LaFave, Criminal Law § 14.2(b), at 775 (footnotes omitted).

The instruction was thus constitutional and not otherwise improper,[6] and the cases appellant relies on are unavailing. It may be true that even "[a] presumption that would permit but not require the jury to assume intent from an isolated fact would prejudge a conclusion which the jury should reach of its own volition." *Morissette v. United States,* 342 U.S. 246, 275, 72 S.Ct. 240, 96 L.Ed. 288 (1952). But the instruction here was not cast in presumptive terms and, as we have seen, did not "isolate" any fact for consideration; rather, it directed the jury to consider all the circumstances before deciding the ultimate issue of whether the government had proved that appellant used a weapon intending to kill Hogg.[7] Similarly, the decisions appellant cites from the United States Court of Appeals for the District of Columbia Circuit either "disclaimed a legally compelled inference or presumption of malice from the use of a deadly weapon in a homicide case," *United States v. Wharton,* 139 U.S.App.D.C. 293, 298, 433 F.2d 451, 456 (1970), or otherwise found erroneous instructions that defined intent so as effectively to preclude consideration of defenses to murder, such as justification or excuse. *See, e.g., Green,* 132 U.S.App.D.C. at 99–100, 405 F.2d at 1370 (instruction improperly equated a "wrongful act intentionally done" with act "done with malice"); *United States v. Perkins,* 162 U.S.App.D.C. 321, 325, 498 F.2d 1054, 1058 (1974) (same). None of those decisions calls into question the permissive instruction given here. *See, e.g., Green,* 132

U.S.App.D.C. at 99, 405 F.2d at 1369 ("As pointed out in *Belton,* . . . 'the law permits [the jury] to infer' malice [from the use of a deadly weapon in the circumstances] . . ., but the law itself does not infer or presume malice.").

## II.

■ Besides his instructional challenge, appellant argues that the evidence of premeditation and deliberation was insufficient because only a single gunshot was fired (to Hogg's jaw and neck, causing him to bleed to death)—a fact, he says, bolstering other evidence that the killing was impulsive, not premeditated. But the jury could fairly find, on the contrary, that hours before the murder appellant had armed himself with a sawed-off shotgun and told a witness "he was going to kill" whoever had raped Melba Norris, then ambushed Hogg and, after forcing him into an apartment building and accusing him of the rape, shot him at close range. Appellant's declared motive and the evidence of a planned retaliation—indeed, execution—for the rape easily met the test for premeditation. *See generally Daniels v. United States,* 738 A.2d 240, 245 (D.C. 1999).

■ Appellant next argues that the judge's delay in granting his trial counsel's motion to withdraw after verdict because of an apparent conflict of interest left appellant without adequately prepared new counsel to advocate for him at sentencing.[8]

**6.** Since this court has not had occasion expressly to approve the instruction, No. 4.201 B., we do so now.

**7.** While appellant argues that the instruction deflected the jury's attention from the evidence of his intoxication at the time of the shooting, no jury instruction on intoxication was asked for by the defense and, as the government points out, the record evidence

that appellant was intoxicated at the time of the shooting is thin, to say the least.

**8.** Appellant cites this as an instance of *per se* ineffective assistance of counsel where the "circumstances . . . are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *United States v. Cronic,* 466 U.S. 648, 658, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). He also alleges an abuse of discretion in the trial

This issue would be troublesome—new counsel had only a week to familiarize himself with the record and investigate appellant's background in this first-degree murder case—but for appellant's failure, even on appeal, to identify matters counsel was unable to argue, or argue more effectively, that reasonably might have convinced the judge to impose a lower sentence. New counsel filed a sentencing memorandum asking for, among other things, concurrent sentences and pointing out that appellant's prior record "mostly involve[d] drug and property offenses, not violent conduct."[9] Although appellant faults him for not calling character or other witnesses (noting that the prosecutor called four in support of a severe sentence), he names no one such witnesses in his briefs and, similarly, no more than picks at the edges of a presentence report depicting his long record of recidivism.

Finally, appellant argues that his two convictions for possessing a firearm during a crime of violence (one related to the Hogg murder, one to the assault on Mr. Walcott with a dangerous weapon) merge, and that his convictions for conspiracy and first-degree murder are inconsistent. Neither argument has merit. Applying the "fresh impulse" or "fork in the road" standards of our decisions, e.g., *Stevenson v. United States*, 760 A.2d 1034, 1035–1037 (D.C.2000), appellant's separate "decision," *Hanna v. United States*, 666 A.2d 845, 855 n. 12 (D.C.1995), to shoot Hogg after he had forced Hogg *and* Walcott into the stairwell of the apartment building justified the separate convictions. Nor did the verdict reflect inconsistency, assuming that fact even mattered. *See*

*United States v. Dobyns*, 679 A.2d 487, 490 (D.C.1996). The evidence fully allowed the jury to find that, while appellant had conspired with Melba Norris and Shacona Gooding to assault Hogg, he separately formed the intent, whether on the scene or earlier, and without the agreement of the others, to kill Hogg.

*Affirmed.*

---

court's refusal to postpone sentencing further at new counsel's request.

9. At the same time, appellant's criminal record—including some seventeen convictions—spanned two decades, and when arrested after he had gone into hiding following the murder of Hogg, he was staying in a hotel room full of evidence of active drug distribution and a loaded revolver.