FILED
05/07/2021
Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs April 27, 2021, at Knoxville

**STATE OF TENNESSEE v. JAMES MOORE**

**Appeal from the Criminal Court for Shelby County**
**Nos. 19-05109, C1907079  J. Robert Carter, Jr., Judge**

_____

**No. W2020-00641-CCA-R3-CD**

_____

The defendant was convicted by a Shelby County jury of attempted first-degree murder and employing a firearm during the commission of a dangerous felony.  As a result of his convictions, the defendant received an effective sentence of twenty-six years.  On appeal, the defendant contends the evidence was insufficient to establish his identity as the shooter and insufficient to support a finding of premeditation.  Upon our thorough review of the record, the applicable law, and the briefs, we affirm the jury's verdict.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and TIMOTHY L. EASTER, JJ., joined.

Tony N. Brayton, Assistant Public Defender, Memphis, Tennessee (on appeal) and Andy Reid and Rob Felkner, Assistant Public Defenders, Memphis, Tennessee (at trial), for the appellant, James Moore.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Matt McLeod and Reagan Murphy, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

*Facts and Procedural Background*

In March 2019, the defendant, James Moore, and the victim, Antwan Parker, had been friends for nearly fifteen years.  Unfortunately, about that time, they had a "falling out" over the defendant's use of the victim's vehicle.  From the victim's perspective, the

matter was resolved and there was no longer an issue between the two after the initial argument on the subject. However, they did not speak to one another after the disagreement.

In the early morning hours of May 2, 2019, both men were at the same nightclub. While the two made eye contact that evening, they did not speak and did not interact with one another while in the nightclub. Around 2:00 a.m., as the club was closing for the night, the victim was leaving with his friends when he ran into Gladys Manuel. After speaking with Ms. Manuel for a few minutes outside of the club, the victim offered to walk her to her car.

As the victim and Ms. Manuel approached her vehicle, the victim heard someone say, "What's up?" Without looking to see who was speaking to him, the victim responded and kept walking towards Ms. Manuel's vehicle. The victim then heard the same voice repeat the question, so he turned to see who was speaking to him.

When he turned, the victim discovered the defendant was standing just a few feet away from him. The victim immediately informed the defendant, "I ain't got time for that. I was telling him I ain't got time for that, I threw my hands up, I ain't got time for that." The next thing the victim knew, the defendant shot him. According to the victim, the defendant was no more than four feet away from him. The victim was unsure how many times the defendant shot at him, describing the event as follows:

> [i]t was so fast to the point when I was looking at him, you know, I seen the fire come out of the gun, I didn't know that I was getting hit at the moment. I was really kind of shocked when I was hearing the gun shots. But I was kind of shocked looking at him shooting me[,] and I fell backwards on the ground and I turned myself around, he was still shooting.

By the end of the incident, the victim had been shot six times by the defendant. The victim also testified that no items were taken from him prior to, during, or after the defendant shot him. As a result of the defendant's attack, the victim endured two surgeries, spent over a month in the hospital and/or a rehabilitation facility, has extreme pain daily, still has a bullet in his back, and is paralyzed.

A few days after the shooting, the victim, who was recovering in the hospital, was contacted by law enforcement. The victim informed the officers that the defendant was the individual who shot him. Later, the victim identified the defendant as the shooter from a photo array as well.

The Crime Scene Unit was called to the scene the night of the shooting. As they searched the scene, the officers discovered five nine-millimeter shell casings, one spent projectile, and numerous bullet fragments; however, no weapons were found at the scene. In addition to the shell casings and fragments, the officers also located the victim's jacket which still had $20.16 in the pocket.

At the conclusion of the State's proof, and following a full *Momon* colloquy, the defendant elected not to testify and chose not to present any proof. Based on this evidence, the jury found the defendant guilty of attempted first-degree murder and employing a firearm during the commission of a dangerous felony. After a sentencing hearing, the trial court sentenced the defendant to twenty years for attempted first-degree murder and six years for employing a firearm during the commission of a dangerous felony to be served consecutively for an effective sentence of twenty-six years' confinement. The defendant filed a motion for new trial which, after a hearing, was denied by the trial court. This timely appeal followed.

## *Analysis*

On appeal, the defendant contends the evidence is not sufficient to support the jury's verdict. More specifically, the defendant insists the State failed to prove his identity as the shooter and failed to establish, if he was the shooter, that the defendant acted with premeditation. The State submits that the victim's testimony is legally sufficient to establish the defendant's identity as the shooter and that the evidence of premeditation is legally sufficient. After our thorough review of the record and the applicable law, we agree with the State and affirm the defendant's convictions.

When the sufficiency of the evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans*, 838 S.W.2d 185, 190-92 (Tenn. 1992); *State v. Anderson*, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *See State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). Our Supreme Court has stated the rationale for this rule:

This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus, the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 212 Tenn. 464, 370 S.W.2d 523 (1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977); *Farmer v. State*, 343 S.W.2d 895, 897 (Tenn. 1961)). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. *State v. Campbell*, 245 S.W.3d 331, 335 (Tenn. 2008) (citing *Byrge v. State*, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence and the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury. *Dorantes*, 331 S.W.3d at 379 (citing *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006)). This Court, when considering the sufficiency of the evidence, shall not reweigh the evidence or substitute its inferences for those drawn by the trier of fact. *Id.*

"The identity of the perpetrator is an essential element of any crime." *Rice*, 184 S.W.3d at 662 (citing *State v. Thompson*, 519 S.W.2d 789, 793 (Tenn. 1975)). The State has the burden of proving the identity of the defendant as the perpetrator beyond a reasonable doubt. *State v. Cribbs*, 967 S.W.2d 773, 779 (Tenn. 1998). The identity of the defendant as the perpetrator may be established by direct evidence, circumstantial evidence, or a combination of the two. *Thompson*, 519 S.W.2d at 793. The identification of the defendant as the perpetrator is a question of fact for the jury after considering all the relevant proof. *State v. Thomas*, 158 S.W.3d 361, 388 (Tenn. 2005) (citing *State v. Strickland*, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993)). As relevant in this case, "the

testimony of a victim, by itself, is sufficient to support a conviction." *Strickland*, 885 S.W.2d at 87 (citing *State v. Williams*, 623 S.W.2d 118, 120 (Tenn. Crim. App. 1981)).

Here, the victim testified he saw and made eye contact with the defendant while the two were inside the club. Then, as the victim was walking Ms. Manuel to her car, the victim heard someone call out to him twice. When he turned to look, the defendant was standing no more than four feet from the victim. The defendant then shot the victim six times. When questioned by police, the victim informed them that the defendant had shot him. The victim later identified the defendant as the shooter from a photo array. Finally, at trial and while under oath, the victim testified that the defendant was the individual who shot him. Based on the law cited *supra* and the numerous identifications made by the victim, the evidence is legally sufficient to establish the defendant's identity as the shooter.

Next, the defendant contends the evidence is insufficient to establish that he acted with premeditation. First-degree murder is the unlawful, intentional, and premeditated killing of another. Tenn. Code Ann. §§ 39-13-201 (2018), -202(a)(1). In the context of first-degree murder, intent is shown if the defendant has the conscious objective or desire to cause the victim's death. *State v. Page*, 81 S.W.3d 781, 790-91 (Tenn. Crim. App. 2002); Tenn. Code Ann. § 39-11-106(a)(18) (2019) (defining intentional as the "conscious objective or desire to engage in the conduct or cause the result"). A premeditated act is one which is

> done after the exercise of reflection and judgment. "Premeditation" means that the intent to kill must have been formed prior to the act itself. It is not necessary that the purpose to kill preexist in the mind of the accused for any definite period of time. The mental state of the accused at the time the accused allegedly decided to kill must be carefully considered in order to determine whether the accused was sufficiently free from excitement and passion as to be capable of premeditation.

*Id.* § 39-13-202(d). The question of whether a defendant acted with premeditation is a question of fact for the jury to be determined from all of the circumstances surrounding the killing. *State v. Davidson*, 121 S.W.3d 600, 614 (Tenn. 2003). Proof of premeditation may be shown by direct or circumstantial evidence. *State v. Brown*, 836 S.W.2d 530, 541 (Tenn. 1992). As a result, the jury "may infer premeditation from the manner and circumstances of the killing." *State v. Jackson*, 173 S.W.3d 401, 408 (Tenn. 2005); *see State v. Vaughn*, 279 S.W.3d 584, 595 (Tenn. Crim. App. 2008). Some facts which may be indicative of the existence of premeditation include the use of a deadly weapon on an unarmed victim, the shooting of the victim after he had turned to retreat or escape, the lack of provocation on the part of the victim, the defendant's declarations of his intent to kill, and the defendant's failure to render aid to the victim. *See, e.g., State v.*

*Bland*, 958 S.W.2d 651, 660 (Tenn. 1997), *cert. denied*, 523 U.S. 1083 (1998); *State v. Martin,* 702 S.W.2d 560, 562-63 (Tenn. 1985), *overruled on other grounds*; *Brown*, 836 S.W.2d at 543; *State v. Fugate*, 776 S.W.2d 541, 545 (Tenn. Crim. App. 1988).

A defendant commits criminal attempt when he acts "with the kind of culpability otherwise required for the offense . . . [and] [a]cts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part[.]" Tenn. Code Ann. § 39-12-101(a)(2).

Viewed in the light most favorable to the State, the evidence shows that the defendant and the victim had a disagreement concerning the defendant's use of the victim's car about a month prior to the shooting and that the two individuals had not spoken to one another since their "falling out." Then, on the night of the shooting, the defendant, who was armed, approached the unarmed victim. Despite the fact the victim did nothing to provoke the defendant and actually held up his hands and told the defendant he did not have time for "that," the defendant shot the victim six times including several times after the victim had fallen to the ground. The defendant then left the scene without rendering aid to his victim. As a result of being shot by the defendant, the victim required two surgeries, still has a bullet in his back, still has extreme pain, and is paralyzed. Based on the proof presented, a rational jury could conclude from the defendant's unprovoked use of a deadly weapon on an unarmed victim, the infliction of multiple gunshot wounds, and the defendant's failure to render aid to his victim that the defendant's actions were premeditated. Accordingly, we affirm the jury's verdict.

### *Conclusion*

Based on the foregoing, we affirm the judgments of the trial court.

_____
J. ROSS DYER, JUDGE