FILED
12/19/2023
Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 12, 2023

## STATE OF TENNESSEE v. LEMONDERIUS ANTWAN GOODNER

**Appeal from the Criminal Court for Davidson County**
**No. 2017-C-1807    Steve R. Dozier, Judge**

_____

### No. M2022-01361-CCA-R3-CD

_____

The defendant, Lemonderius Antwan Goodner, was convicted by a Davidson County Criminal Court jury of premeditated first-degree murder, felony murder, and attempted especially aggravated robbery, for which he received an effective sentence of life imprisonment plus ten years. On appeal, the defendant argues that the evidence is insufficient to sustain his convictions. After reviewing the record and considering the applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Leah R. Wilson, Nashville, Tennessee, for the appellant, Lemonderius Antwan Goodner.

Jonathan Skrmetti, Attorney General and Reporter; Caroline Weldon, Assistant Attorney General; Glenn Funk, District Attorney General; and Jennifer Charles, David Jones, and Wesley King, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### *Facts and Procedural History*

This case arises out of the defendant's attempted robbery and shooting of the victim, Carlos Moran, on May 29, 2017, for which he was indicted for premeditated first-degree murder, felony murder, and attempted especially aggravated robbery. Surveillance cameras around the Tony Sudekum or "University Court" public housing development

where the incident took place captured the defendant's activities on the premises, including his interactions with the victim and shooting the victim in the back.

Detective William Mathis with the Metropolitan Nashville Police Department ("MNPD") received a call concerning a shooting at the University Court housing development on May 29, 2017. Learning that the victim had already been transported to the hospital, Detective Mathis went to the hospital but was unable to interview the victim due to his condition. The victim had sustained one gunshot wound to his lower right back that exited his body through the front left thigh. Detective Mathis obtained items of the victim's clothing and turned those items over to Courtney Bouchie, a crime scene investigator with the MNPD. At the scene of the shooting, Investigator Bouchie found three .40-caliber cartridge casings and also collected items of clothing with blood stains.

Detective Mathis obtained video surveillance footage from the Metropolitan Development and Housing Authority from the day of the shooting. Detective Mathis explained that the cameras were motion activated and began recording when movement triggered the sensor. Detective Mathis also used the footage to create still images of the sequence of events leading up to, and including, the shooting.

The surveillance footage showed the defendant and his girlfriend, Sheba Drake, arrive at University Court in Ms. Drake's black, two-door Pontiac G6. Ms. Drake can be seen leaving University Court as the defendant joined in a dice game with other men. A while later, the victim is seen walking down the sidewalk. As the victim got closer to the defendant, the defendant left the dice game and met the victim on the other side of the building. The defendant returned to the area near the dice game and appeared to search for something in the bushes. The defendant then approached the victim again, and the victim handed the defendant some money. Upon receiving the victim's money, the defendant produced and pointed a gun at the victim. Two men, who were with the defendant, then searched the victim's pockets while the defendant held him at gunpoint. When the victim attempted to flee, the defendant shot him in the back. The video then shows that Ms. Drake returned to University Court, picked up the defendant, and they drove away.

The day after the shooting, Detective Mathis learned that the victim's condition had deteriorated and his injuries were life-threatening. The victim was intubated and placed in a medically-induced coma before succumbing to his injuries on June 1, 2017. Following an autopsy, the victim's cause of death was confirmed as a gunshot wound and manner of death was homicide.

Detective Mathis distributed the still images that he had created from the surveillance footage to officers who routinely worked the University Court area. Sergeant Andrew Grega of the MNPD was one such officer, and Sergeant Grega reviewed the

photographs and identified the defendant as the suspect. Based on information received from Sergeant Grega, Detective Mathis investigated the Facebook account of "BG Lildoodie." Detective Mathis saw that the owner of the Facebook profile had posted a photograph of himself on May 29, 2017, approximately two hours after the shooting. In the photograph, the grip of a pistol can be seen protruding from the individual's pants pocket, and the caption for the photo read: "I'm Death To All Da Threats And Brought Aye Weapon For The Arguments." The caption was followed by a string of emojis, including a 100 percent, a flexing bicep, and a gun.

Detective Mathis obtained a search warrant for BG Lildoodie's Facebook account and learned there were two email addresses associated with the account: Lemonderious.G.Goodner@Facebook.com and Goodner45@yahoo.com. Detective Mathis also received all of the photographs, posts, and private messages for the account.

In one private message that occurred about two hours after the shooting, a Facebook user named Da Finessa Finessa asked the defendant why he "hit" the victim and the defendant answered, "Ion Kno I slicc Was Bsn," which is slang for "bustin" or "bullsh***ing." Later in the exchange, the defendant expressed concern that someone was going to "snitch," to which Da Finessa Finessa agreed and also noted the defendant was "on camera." Da Finessa Finessa instructed the defendant to "[s]tay low." The defendant asked, "Wea I hit em at N da bacc"? Da Finessa Finessa replied, "Bak and hip." When the defendant asked if the victim had died, Da Finessa Finessa responded, "Ion think so." The defendant replied, "Awwww." In a message the next day, Da Finessa Finessa informed the defendant that the police were "hot," i.e., in the area, and to stay indoors.

On June 1, 2017, the defendant exchanged private messages with a Facebook user named ShaDaisha Danielle Martin in which the defendant asked Ms. Martin if she knew that he was on the run for attempted murder. When Ms. Martin told the defendant that she had not heard that information, the defendant queried, "You didn't hear about me shooting dude?"

Based on his investigation, Detective Mathis obtained a warrant for the defendant's arrest on June 1, 2017, and attempted to determine the defendant's location based on his Facebook activity. The defendant posted videos on his Facebook account and based on the features of the buildings in the background, the defendant was tracked to Ms. Drake's apartment at the Burning Tree apartment complex in Hermitage where he was arrested on June 2, 2017.

Detective Mathis affirmed that during the course of his investigation, he did not find any evidence to suggest the victim had posed a physical threat to the defendant on the day of the shooting. No weapons were found on or near the victim's body, and the surveillance

footage did not show the victim with any weapon. The surveillance footage also showed that the victim did not get physical or attempt to get physical with the defendant prior to the shooting. The footage revealed that the victim's back was to the defendant and that he appeared to be running away when he was shot. The defendant did not render aid to the victim.

After the defendant was arrested, he called Ms. Drake from jail and their conversation was recorded. Investigator Linda Griffin of the Davidson County Sheriff's Office explained the process for tracking inmate phone calls and how she found a recording of the conversation between the defendant and Ms. Drake. During the call, the defendant accused Ms. Drake of reporting him to law enforcement, and Ms. Drake told the defendant that law enforcement found him because of his Facebook posts.

The murder weapon, a .40-caliber Smith & Wesson pistol, was recovered on September 27, 2017, during an investigative stop of a man named Keith Puckett at the University Court development. Mr. Puckett was incarcerated on the day of the shooting in this case, but Detective Mathis explained it was not uncommon for a gun to be used in multiple crimes committed by different people.

Rhonda Evans, a firearms examiner with the MNPD, test fired the recovered weapon and entered the ejected cartridge casings into a national ballistics database. The database linked the test firings to the three .40-caliber cartridge casings recovered from the crime scene. The pistol was also linked to an unrelated shooting that occurred on August 14, 2017.

Based on this proof, the jury convicted the defendant as charged of premeditated first-degree murder, felony murder, and attempted especially aggravated robbery. The defendant was subsequently sentenced to life imprisonment plus ten years. This appeal followed.

### *Analysis*

The defendant argues that the evidence is insufficient to sustain his convictions. The defendant asserts there is "no proof" he intended to kill the victim or that he acted with premeditation. The defendant also asserts that he did not attempt to rob the victim, claiming he was only trying to reclaim something he believed the victim had taken from him. He extrapolates that because he did not attempt to rob the victim, then he could not be guilty of felony murder. The State responds that viewing the evidence in the light most favorable to the State, the evidence established all essential elements of the charged offenses. We agree with the State.

- 4 -

When the sufficiency of the evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also* Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); *State v. Evans*, 838 S.W.2d 185, 190-92 (Tenn. 1992); *State v. Anderson*, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. *See State v. Pappas*, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court has stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus, the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 212 Tenn. 464, 370 S.W.2d 523 (1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

## I.  First-degree Murder

First-degree murder is the premeditated and intentional killing of another. Tenn. Code Ann. § 39-13-202(a)(1). Premeditation is "an act done after the exercise of reflection and judgment." *Id.* § 39-13-202(d). Tennessee Code Annotated section 39-13-202(d) further states:

> "Premeditation" means that the intent to kill must have been formed prior to the act itself. It is not necessary that the purpose to kill preexist in the mind of the accused for any definite period of time. The mental state of the accused at the time the accused allegedly decided to kill must be carefully considered

in order to determine whether the accused was sufficiently free from excitement and passion as to be capable of premeditation.

*Id.* "The element of premeditation is a question for the jury which may be established by proof of the circumstances surrounding the killing." *State v. Young*, 196 S.W.3d 85, 108 (Tenn. 2006) (citing *State v. Bland*, 958 S.W.2d 651, 660 (Tenn. 1997)). Some facts which may be indicative of the existence of premeditation include the use of a deadly weapon on an unarmed victim, the shooting of the victim after he had turned to retreat or escape, the lack of provocation on the part of the victim, the defendant's declarations of his intent to kill, and the defendant's failure to render aid to the victim. *See, e.g.*, *Bland*, 958 S.W.2d at 660; *State v. Martin*, 702 S.W.2d 560, 562-63 (Tenn. 1985), *overruled on other grounds by State v. Brown*, 836 S.W.2d 530, 543 (Tenn. 1992); *State v. Lewis*, 36 S.W.3d 88, 96 (Tenn. Crim. App. 2000).

In the light most favorable to the State, there was sufficient evidence from which the jury could determine that the defendant intended to kill the victim and acted with premeditation. According to the proof presented, the defendant, armed with a pistol, confronted the unarmed victim. The defendant held the victim at gunpoint while his two associates searched the victim's pockets. Then, when the victim turned to flee, the defendant shot the victim in the back as he was running away. The defendant did not attempt to render aid to the victim. Instead, the defendant ran from the scene and hid for four days until he was captured. Upon reviewing the surveillance footage or evidence found at the scene, officers discovered no indication of provocation by the victim.

In addition, the defendant's intent can be inferred from his activity on Facebook in the hours and days after the shooting. Approximately two hours after the shooting, the defendant posted a photograph of himself on Facebook with the apparent murder weapon protruding from his pocket and a caption that read: "I'm Death To All Da Threats And Brought Aye Weapon For The Arguments." The caption was followed by a string of emojis, including a 100 percent, a flexing bicep, and a gun. In private messages with two different Facebook users, the defendant seemingly bragged about the shooting and acted disappointed when he learned that the victim had not yet died. Viewed in a light most favorable to the State, the evidence is sufficient to sustain the defendant's conviction for premeditated first-degree murder. Accordingly, the defendant is not entitled to relief.

## II. Felony Murder and Attempted Especially Aggravated Robbery

First-degree felony murder is "[a] killing of another committed in the perpetration of or attempt to perpetrate any . . . robbery[.]" Tenn. Code Ann. § 39-13-202(a)(2). Robbery is "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." *Id.* § 39-13-401. An aggravated robbery occurs

when a robbery is "[a]ccomplished with a deadly weapon . . . or [w]here the victim suffers serious bodily injury." *Id.* § 39-13-402. When "accomplished with a deadly weapon" and when "the victim suffers serious bodily injury," a robbery is elevated to especially aggravated robbery. *Id.* § 39-13-403. "A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense" either "[a]cts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part" or "[a]cts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense." *Id.* § 39-12-101(2), (3).

In the light most favorable to the State, there was sufficient evidence from which the jury could determine that the defendant attempted to rob the victim and then killed the victim during the attempt. The surveillance footage showed that the defendant, armed with a pistol, walked across the parking lot toward the victim, and the victim handed the defendant some money. The defendant then pointed his gun at the victim and held him at gunpoint while his associates pilfered through the victim's pockets. When the victim attempted to flee from the encounter, the defendant shot the victim in the back. The defendant's assertion that he was only trying to reclaim something he believed the victim to have taken from him, not to rob the victim, is without any support in the record. The evidence is sufficient to sustain the defendant's convictions for felony murder and attempted especially aggravated robbery, and we, therefore, affirm the defendant's convictions.

## *Conclusion*

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
J. ROSS DYER, JUDGE